Good morning. Welcome to the Court of Appeals. We have three cases. We were here today, and the first case on the argument calendar today is Jackson Creek Marine v. State of Maryland. We will hear from the appellant's attorney. Good morning. May it please the Court? My name is David Sump, and with Christopher Abel, we represent the State of Maryland today. This is a case regarding the constitutionality of the Shipowner Limitation of Liability Act of 1851 as it applies to the sovereign states of America. I thought it was a case about waiver. No waiver, Your Honor. Isn't that what the issue is? Well, I'm sure my opponents would love waiver to be the issue, Your Honor, but the actual claim that was filed in this case reserved and identified that there was no waiver of our right, the state's right, to have its case heard in its own court, in its own forum, in its own state, which was not happening here. So we would assert that there is no waiver in this case. And it's a 12B6 motion, so you can't imply a waiver. It has to be an absolute waiver. So we don't see a waiver issue here, Your Honor. So what this case is about is a tug owned by Jackson Creek Marine that pushed a barge into the Route 50 Bridge over the Nantuck River and did property damage to the bridge. The bridge damage was $3 million, thereabouts. The state sent an invoice to the owner of Jackson Creek Marine. So you're not a plaintiff in this case? Your Honor? You're not a plaintiff in this action? We are not. We are respondent to the petitioner's petition. So it's all about this Limitations Act? Yes, Your Honor. They want to say it's limited to a certain amount. You said we don't belong in this court because we are state and we can be our own. But I said it's waiver because doesn't it sound like to me that's the issue we'll be on is they say, well, you waived this because you appeared in court. You file an answer. And there's a case, what is that, 1800 case? I'm on a different case. There's an old case, Clark v. Barnard from 1883. They sort of long ago established that by doing things kind of what they say you're doing, you waive your right to assert immunity. But isn't that the issue? Or is there some other issue in this case? Oh, no, there's a lot more issues than that, Your Honor. But I mean the focal issue here in this case because it's their case, the plaintiff case, they want to be able to bring it. You say they shouldn't even be able to talk to you because you're a state. That's right. You have immunity. That's right. They say you waived it. Right. Isn't that the big issue in the case? Or is there another? Tell me the big issue then. The big issue is whether Congress had a right to enact a statute that abridged the state of Maryland's right to pursue a tort fees or for the property damage to the bridge. That's that section, what's it, F? Yeah, Rule F of the Supplemental Abidenty Rules. But let me address your first issue, Your Honor. I think we need to get rid of that. Because I think that it seems to me it plays into one another. There is a case called In Re American, a river transportation that was decided in 2015 where the Eighth Circuit Court of Appeals said in order to move to dismiss an action in limitation, you must first appear and file a claim. So the obligation to file a claim was that the federal government found out about this obligation in the In Re American river transportation case because in order to have standing to challenge the limitation, you must first appear and make a claim to establish your right to be in the limitation. So the usual rules for waiver where if you agreed to appear in court without filing the 12B immediately, you might be viewed as waiving. That's not the case in limitation because limitation is a special unicorn type of action. This is just one instance of how a limitation action does not behave like other actions. So the initial action, I'm sure my colleagues are going to have a lot of questions for you. So you probably have to get ready. But the initial thing you're talking about, the claim that has to be filed, that would be Maryland. Yes. In a state court. So the limitation applies to Maryland. Tell me, where would you file it? So on our own record, we would file that action in state court for a negligence cause of action against a vassal owner for failing to pay the damages for the purpose of residency. That's not the claim you're talking about. That's what you would do. And you're talking about if you file the claim, and then you do that, you're talking about the claim that the court supports this action. So when the petition is filed in our PD, the judge issues a decree that says, anybody that gives themselves a claim against a vassal owner must appear and make that claim in this court by a particular deadline. So what it says is that if you're going to have to show up and make the claim, you have to put down your rights to the claim. That doesn't actually make you show up. It's just a choice. So you get that. But it doesn't actually say that you must show up. So I'd imagine if he did tell you that you must show up, that would actually implicate your autonomy. But the law here is that, like the Supreme Court described in the hood, if they make you show up, you should choose to do so.  But the Constitution would allow a process to create a system where the state is sitting there with that choice. And that's what happens in the hood, right? Yes. The Supreme Court says exactly that. It says, listen, you've got your choice. You voluntarily showed up in the case that you're succeeding, right? There's an action. Unlike this one, there's an actual summons. This issue, of course, doesn't matter, right? You've got that choice of whether to participate or not. You've got your choice here of whether to participate or not. And, you know, I get that's a tough place for an OAD. But, listen, it seems like this one was pretty clear that if you have a sovereignty issue, it's not something that needs a system that I'm advocating here. So we don't have to worry about it. We don't have to worry about litigation or anything else. This is a sovereignty problem to talk about. Yes, yes, there is. Because the names of the clauses of action is not a limitation of the clauses of action. Okay? And Tuesday is not a Thursday. But I want to know what makes you think different from those examples whether or not this is giving you, as the state, an option to show up or not. Whether you show up or not, you do not have to pay any money. You do not have to pay any money. But the course of the case in Maryland of not having to pay any money out might affect that money you get in the near future. Now, that was good, right? So it doesn't really matter. The fact that you could put this as an optional choice, right? That's not good. That doesn't make a difference. There is no sovereignty. I take it. That seems to be the problem that I see. Section 106 of the bankruptcy code identifies all sections of the bankruptcy code that implicate the sovereign rights of states. It has been determined that the bankruptcy law of the Constitution is basically a waiver of sovereignty by vice states and when the bankruptcy clause was executed, that's not a response. That might help us if we're talking about cats. Cats talk about what sovereignty means. Implicated and not abrogated. Totally understandable. 106 is like cats. It doesn't mean anything but good. It tells us that this process doesn't implicate sovereignty. It's not an abrogation. It's not a process of power. It's simply not implicated. It's the state of Maryland's sovereignty. That's what it tells us in contrast with cats.  So if you only want to interpret this case as an 11th Amendment case, and if you only want to look at this case whether or not this is an abrogation committed or not committed by the 11th Amendment, that might be correct. But, first of all, it's not an 11th Amendment case. It's a sovereignty case. And I'm telling you, I don't think there's an abrogation here because I don't think sovereignty is implicated. I don't understand how that maybe is not saying anything either way. An 11th Amendment is under its own system of sovereignty. Abrogation is its own law and system. In my view, it's simply irrelevant. So if we were to agree that this isn't an 11th Amendment case, that we can't make the test to satisfy the 11th Amendment to protect state data or Maryland, Maryland has other sovereign rights beyond the 11th Amendment. The 10th Amendment says, any rights that cannot be granted to the federal government are retained by the states. And what we're looking at here is, did the Congress have a right to interfere with Maryland's right to recover on this invoice? Did the Congress have a right to abort that statute in 1851? Did it have the authority to protect the 11th Amendment? Just as a counterintuitive amendment, it's just as if I understand what you're saying. You say, I'm not sure what the distinction you're drawing between the 10th and the 11th Amendment. So sometimes you use the words 11th Amendment to stress the sovereign immunity more broadly. But I think the 11th Amendment's response to chichesm, and I go back to Himes, the 11th Amendment doesn't encompass the full scope of sovereign immunity. I haven't used the term 11th Amendment when I'm talking about sovereign immunity. Are you making my claim separate from sovereign immunity? Is there a separate 10th Amendment? Or are you independent of the doctrine of sovereign immunity? Yes. The 10th Amendment is more expansive. But if I could go back to the 10th Amendment. So can you start at the end of your brief where you make a 10th Amendment argument that's independent from sovereign immunity? This cites the case of the City of New York v. Milne, which is an 1837 case where the Supreme Court decided, looked at the panoply of rights that a state has independent of the federal government, including administering its highways, its bridges, and the other internal workings of that state. Nobody doubts that you have those rights. Right. So the question then becomes. You can fix the bridge, right? If they knock the bridge down, you can fix it. I totally get it. You've got an array of police powers. Right. But I don't see that's got anything to do with what we're talking about. The question is whether the federal government has the authority to enact this statute. Yes. And the question is. If you look at the case of FMC v. South Carolina State Ports Authorities, you must uphold the dignity of the state sovereignty. And in that case, this court, the Fourth Circuit, and then affirmed by the Supreme Court, determined that a complaint could not be adjudicated against a state by the FMC because that insulted the dignity of a state. This is no different. Telling a state that they cannot pursue or could have their entire claim compromised by a statute that doesn't even mention states. And so your view is that this is like hood is wrong. Like the Supreme Court in its set of cases is just wrong because all of those cases similarly, as you would claim, impugn the dignity of states. Right. But, again, I would indicate to you that I think that a bankruptcy case lies on different footing than this case does. And you have to remember that for 150 years, no one implicated the state's rights in the administration of the Limitation of Liability Act. It took 150 years before the 11th Circuit. Why does that matter? I mean the whole – the point of this, I don't understand why that makes a difference, and I still don't understand why the bankruptcy code is different. And then I'll stop and let my colleagues ask questions. But maybe go back to the bankruptcy code for a second. Sure. So if in hood the court says that this simply doesn't implicate a state's sovereign immunity, which is what the court said in hood, why does the nature of bankruptcy matter? It's not abrogation. The nature of bankruptcy might matter if we're talking about abrogation, right? That's cats. But in hood, the court's at the threshold saying this simply doesn't implicate your sovereign immunity at all. We don't have to worry about whether we're overcoming it or abrogating it. It's not implicated. Yes, Your Honor. And, again, I would assert that a bankruptcy litigation is different than the Limitation of Liability Act. And the state does have rights that are implicated when a claim against a tort fees can be reduced to zero by virtue of a congressional statute that says the limitation fund equals the value of the vessel after the casualty. And I think FMC is really more on point than hood is when evaluating the implications of the state's rights and whether a state should be forced to answer for a limitation action that is intended solely to But I thought we've said already you agreed that you're not forced to answer, that you made a choice to answer. Yes, it's the Hobbesian choice that doesn't You're given the choice. That's right. And it violates the dignity and the rights of a state to be forced to appear in court. Either you come to court and you assert your claim or it's defaulted by the court. There's a default order that says you may never recover on this claim. And the question is where is the authority of Congress to have drafted and implemented that statute when, in fact, there is no reference to states and how it could ever be applied to states. And it wasn't until the Bouchard v. Undegraff decision in 1998 that a court ever applied the Limitation of Liability Act to a state. Well, that's the focal issue in this case that I think you focused on with Judge Richardson is that you're saying this doesn't apply to the state at all. No. That the state should be able to go into the state court, your own court as you say, bring your negligence action. You shouldn't have a federal court coming and saying, well, we're going to limit the damage you get from beginning. Why don't we hear from the other side and then we'll come back and I'm sure there will be additional questions for you. Thank you, Your Honor. Good morning, Your Honors. May it please the court. My name is Marisa Henderson, counsel for Jackson Creek Marine. I'm here with my law partner, Dave Venker. And the court has already posed a number of very interesting questions, so I'm not sure if I should start with waiver or if I should start with Judge Richardson's arguments. Always start in the middle. All right, Judge Wynn. All right, let's go with waiver. I think there is a decent argument that the state has, in fact, waived its right to argue that it has, that its sovereign immunity is implicated here. And although it did, it was forced to file a claim and answer, let's take a look at that claim and answer. That claim that the state filed actually invokes the court's admiralty jurisdiction under Rule 9H, which is kind of a special thing. Is it your view that the state of Maryland could raise a constitutional challenge to the action without making some sort of an appearance? I mean, I understand your briefing seemed to focus on the manner in which they answered, and I understand that argument. But at the threshold question, I take your colleague's position to be, not to put words in his mouth, is like we can't challenge it without being in it in some sense. So that raises an interesting question because this actually happened in the Eastern District of Virginia. I understand, but I'm asking whether you think. Oh, I'm sorry, I'm getting there. Is your view that just the mere act of saying we have an interest and we want to challenge the constitutionality, that that is sufficient to amount to waiver? So what they have to do instead is what? So the VDOT came into the Eastern District of Virginia in a limitation action, and before filing a claim and answer, it filed a motion to dismiss on sovereign immunity grounds. So that's the American Bridge case. And that probably is not a waiver because they didn't make a general appearance. They said, hey, we have a. So why, if I'm the district court, why do I let a non-party show up and move to dismiss an action that they're not a part of? I haven't looked at the underlying pleadings. That seems particularly odd, right? We think in personal jurisdiction cases, in most cases, right, you've got to be served before you file a motion to dismiss, even based on jurisdictional grounds. I mean, it seems odd to say, like, that even before you're a part of the case in any sense, you've got to do something. And I don't know what mechanism exists to, like, force a non-party to move to dismiss when they're not even part of the action. All I can say is that there were ways that Maryland could have protected its right and prevented a waiver, and it did not see that. At JA34, in the state of Maryland's answer, there does seem to be a disclaimer and a preservation of the rights of the state. It says that the answer did not constitute a waiver of its right to litigate damages in any forum and at a later time of its choosing which right Maryland specifically reserves. That seems to be a preservation. It is a preservation to argue in a different forum. So, for example, they could have stipulated to the limitation fund and gone to a different forum. But I submit it's not a full waiver, a full preservation of the sovereign immunity right, because the page before on JA33, paragraph 5, they affirmatively assert the court's jurisdiction under Rule 9H, and they state this claim is an admiralty and maritime claim within the jurisdiction of this court under 28 U.S.C. 1333, Federal Rule of Civil Procedure 9H, and Supplemental Admiralty Rule Procedure F5. But that's totally true, right? That's not inconsistent with their claim of sovereign immunity. Their point is this is an admiralty action. This is legitimate as it applies to everybody except for the state of Maryland. So it's not outside of the court's jurisdiction. It's just that they – I mean, you might guess I've got questions about whether they're right about this, but their argument is not that the federal courts lack jurisdiction over any such act, but the federal courts can't hail them into court in such an action. That's fair, and I turn – I would ask you to look at the Google case, which came out of the Fourth Circuit in 2024, which does talk about waiver. And in that case, this court said that because the state voluntarily entered into an antitrust suit, it could not then argue sovereign immunity with respect to a subpoena that was issued. And the language – When you used the word in that case, you said they entered into an antitrust suit. Filed suit, yes. Right. So if they filed the suit, you can't complain about the suit. Fair. So we don't think Maryland filed the suit, right? Your client filed the suit. Yes, but they filed it. They're responding to the court's order, the court's invitation to show up. It's like being a defendant. If you show up and say, yeah, you served me, but I want to assert that you lack personal jurisdiction, they can do that, right? They don't have to, like, wait until the judgment is entered and challenge the default judgment, right? Right. But I would point out that in this case, Maryland not just came in and challenged jurisdiction. They came in, they fully litigated the case. We were at the end of discovery. They filed a motion for summary judgment on the merits. So there is more – Arguably, by fully participating in the litigation, there is – At some point, there comes a way because they're voluntary litigating. But, Your Honors, I don't think it matters in the end because there is no abrogation of Maryland's sovereign rights. So you don't even really need to reach the waiver question, which is why we led in our briefs on the issues that there's no abrogation of the Maryland's rights. And I think the court exactly – Judge Richardson, you have it exactly right. Bankruptcy, the court in Hood taught us, shows us that bankruptcy analogy is completely applicable to a limitation action in all substantive purposes in order to decide this question. The Maryland right you refer to, allude to, is that the 11th Amendment? The 11th Amendment as interpreted by the Supreme Court. So the 11th Amendment doesn't establish sovereign immunity, but it does confirm it. And there are – while there are broader rights, and the court has – the Supreme Court has regularly construed the 11th Amendment beyond the literal text. Maryland would rather go to its own courts and seek this in Maryland courts for the usual actions of negligence. But now you ended up, as a matter of admiralty, in the federal court as a defensive action as opposed to the plaintiff's action. That's what really complicates this. It seemed to indicate there are just not a lot of cases in which the state has been a defendant in these cases. Is that correct? Honestly, Your Honor, I don't know that there are not a lot of cases in which the state has been a defendant. But there are not a lot of cases in which the state has challenged that they had to even be in a limitation action. Depends on how much the damages are. I mean, if you had a boat worth $2 billion and the bridge was worth a half million, you're probably not going to contest that the limitation is $2 billion. In fact, yes. But in this instance where you've got an amount that's way in excess of what the limitation is being in excess, what they are saying is that the federal government has no business coming in and telling them they can't get something. And even the statute itself doesn't name them as parties that would be a part of it because they are in the – they are sovereign, just like the United States is. And there's a couple of ways to look at the answer to that question. First of all, it's a supremacy clause, right? This is a validly issued congressional statute. So it should apply equally to states as with other citizens unless the state has a sovereign immunity right. But the court has told us in Hood and other contexts that there can be instances in which the state's coffers are affected and their claims are reduced, such as in bankruptcy, and it is not a violation of a state's rights under sovereign immunity because – in enacting the Limitation Act. It does seem unfair that the taxpayers of the state of Maryland will be on the hook for a repair that's $3 million without any ability to seek recovery. It would only matter if there was an abrogation of sovereign immunity, in which case you would need to find a clear statement of congressional intent. But we believe that because there is no offensive claim against the state – let's go back to the language of the 11th Amendment – then there is no abrogation of sovereign immunity, in which case you don't need a clear statement. I don't think Congress would even consider that there could be an abrogation of a state's sovereign immunity in this case, so there doesn't need to be a clear statement. And if you look back at the text of the 11th Amendment, it talks about the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States. There is no suit commenced or prosecuted against Maryland. In fact, every court that has considered this issue – two circuit courts and three district courts – have found, in fact, that Maryland's claims of sovereign immunity – they're not valid. And that's, again, because there's no affirmative action. Jackson Creek Marine, our client, is not trying to get anything from the state. We're not trying to get money. We're not trying to get anything from them. So, therefore, there is no offensive action. And, like I said, the 10th Circuit in the Magnolia Marine Transport case, the 11th Circuit in the Bouchard case, Eastern District of Virginia twice now, Southern District of Florida, and Eastern District of Louisiana have all rejected all the claims and all the arguments that are made by Maryland today. I did want – Is your colleague going to pick up where you are right now? I hope so, Your Honor. Why don't you let your colleague – oh, you can just borrow some of her time if you want to. Good morning. May it please the Court. Sophia Shams on behalf of the United States. As the discussions today here have reflected, a limitation proceeding is one that is defensive in nature. A court's role in this context is just to determine whether a shipowner is entitled to a limitation of his damages. And for that reason, it's sufficiently analogous to a bankruptcy proceeding, and sovereign immunity does not apply. Two circuits have held as much, and there's no need to create a circuit split here. For that reason – Is Maryland being held in the court here? Your Honor, Maryland is not being held into court here. What's the choice it has? The choice it has is what this Court recognized in Antonelli Creditors, In re Collins, and as well as what the Supreme Court has recognized in Hood, which is that Maryland has a choice to file its claim to get proceeds from the limitation fund, or Maryland can forego its claim in this context. But Maryland is not being issued any sort of summons. It's not being required to go into court. It's not being named as a defendant. And these are all – So to file a claim to get from the limitations fund means that they cannot go any higher, I guess in this instance, than the $900,000? That's correct, Your Honor, that they would not – Does Maryland have a choice that allows it to pursue the full $3-plus million? Not in this context, Your Honor. It does not. And that's precisely – from getting damages from a private entity, a shipowner, whatever, that drives into his bridge, causes $3 million worth of damages. If nothing was done, in other words, if your client or not your client but Jackson Creek had done nothing, then they could go into state court and maybe get a judgment, $3 million, and recover. But because this intervenes, or want to have a better term, this comes into play, this is a limitation action. You said, well, they're not a plaintiff. But they are. Because they want $3 million, not $900,000. But they can't get that $3 million if they don't find some way to get in and argue the constitutionality of having them in court, or some way in which they can challenge you don't have a right to tell the state of Maryland that we can only get this amount of money. Your Honor, the limitation proceeding provides exclusive jurisdiction in this context to federal court, just like Section 1333 of the U.S. Code does for certain admiralty proceedings. And I don't think any party in this case is arguing that that provision is unconstitutional. I think courts around the country, as well as the Supreme Court, have recognized Congress's unique role in issuing statutes with respect to admiralty, and that federal courts have. What's the procedure route in which Rule F came about? You had it in 1883, the clock case. Then you saw the problem of venue and location. It was a Supreme Court case that sort of drove this. Your Honor, the Supreme Court's decision in Norwick did establish some of the procedures for Rule F, but the right to a limitation of a vessel in and of itself was established by Congress in the Limitation and Liability Act under Section 3523 and 3529. Can I ask a follow-up question to that? If the Limitation Act was never filed, so if they just never filed such an action, and the state of Maryland instead filed an action in the state court of Maryland, which absent a Limitation Act they would be entitled to do, would the Limitation Act's cap on damages apply in the state court action too? I think it could because Section 3523 provides generally for a limitation of liability in these contexts. I think it's also important to recognize that there might still be removal to federal court under Section 1333, which provides federal courts with admiralty jurisdiction. I think there are contexts in which we would still be in federal court in this case. So you're saying it could be filed in state court, and then an affirmative defense is brought by Jackson Creek in state court, I guess, to say that the Limitation Act limits the amount we pay. Is it then the state court can then act under this federal statute, or do they then have to, once the judgment comes out, institute this Limitations Act under this Rule F in federal court? Right, so let me clarify. I think in that context of which a state court proceeding is already initiated, which this has not happened in this case because Maryland has not done so, but in that context there could be a limitation defense, and it could be removed to federal court in that context because the Act provides federal courts with exclusive jurisdiction. But in a case like this, and under the venue procedures under that case, they would have to file, the shipowner would have to file in a federal court in that state. But in a case like this.  If you're looking at the Section 3523, that basically establishes a limitation. It establishes a right. Sure. But the proceedings, I suppose, could be heard in any court. Any federal court, sure. But the limitation part is the federal court, is that right? The limitation part should be heard in federal court. That is what Congress provided for. And I want to emphasize that what Maryland's arguing today is essentially a contestation of venue, right? So they're arguing that they shouldn't be held in a particular federal court. But the problem is, is that these types of venue claims have been rejected in the bankruptcy context. They've been rejected by the federal circuit in the patent context. And in this type of case, Maryland is simply not acting as a defendant. So here's the odd thing. You've got an accident that occurred. No one has assessed liability one way or the other. And you come into federal court, says, I want to be limited to 900,000 damages. But potentially you could be found not negligent, not owing anything. Does that obligate you then to pay the 900,000? Even if you go into federal court, are you basically conceding liability for up to that amount? Your Honor, I think the action in federal court, what it does is it initiates a proceeding to determine your liability. And so in order to make that liability determination, the court does have to look at whether the act would be implicated. So, for example, whether there's a finding of negligence, as Maryland has alleged in this case. If that's the case, then the Limitation Liability Act kicks into action. And a shipowner is entitled to a limitation of his damages, which means Maryland can only collect up to 900,000. The court's role at that point is to allocate the fund accordingly to all claimants. And so in this case, Maryland might be the only claimant. But the purpose of this act is to streamline claims into a single court, just like in a bankruptcy proceeding, and ensure that claimants are given their due, as well as a vessel owner is given their right to diminish their liability. How does Maryland protect itself? You've got ships out there. If you've got a ship out there, let's say worth a half million dollars, it runs into a tunnel or a bridge that's worth half a billion or whatever. You're telling me Maryland cannot keep these vessels from coming in if they don't say, I mean, can Maryland say, you're not going to drive your ship through here because if you hit my bridge and tear this bridge up, I'm going to have to pay for it and all you give me is the value of this ship. Can they prohibit them from coming in? I'm not sure the actions Maryland can take to wholesale prohibit ships from coming in. But what I do know. Typically, we don't allow states to interfere with the navigation of the waters of the United States. That'd be a highly unusual thing for a state to be permitted to do. Certainly. But I'm not prepared to talk about one way or the other. The question is really not as to, you know, I understand, you know, being a Navy guy myself, navigation is free. I'm talking about liability. Do you get to navigate something that can cause or for which your liability for where you're going can cause excessive damages and a statute now limits. Maryland says I don't care if it costs $10 million to fix that bridge over there. If that ship is only worth $50,000, that's all you're going to get. And it can't tell ships that for $50,000, you can't go buy my expensive bridge up here. Maybe provide an alternate way. There's none of that that's there. I'm not entirely sure what the state could do in this context. But, Your Honor, two points I want to make that I think address your concern. First, in the bankruptcy context, a state is entitled to certain debts from a debtor. And this court has recognized and the Supreme Court has recognized that the fact that the state may lose out on that judgment or may forego its claim altogether is not enough for sovereign immunity to be implicated. And, second, the purpose of this act, which the Supreme Court has recognized in Norwick and cases thereafter, is to provide protection to ship owners in order to promote maritime commerce. It is a longstanding common law practice, and we have a longstanding tradition of Congress regulating in this realm. And so I don't think that the underlying concerns of the state, while they are serious and we recognize that, are enough to implicate their sovereign immunity claims. Congress was well within its power to enact an admiralty statute of this nature. The Supreme Court has recognized in similar proceedings like bankruptcy, and this court has likewise done as well, that these types of proceedings just do not implicate sovereign immunity. And two circuits, as well as federal district courts, have recognized as much as well. There's simply no need to create a circuit split in this context where there is a streamlined process for resolving claims. For that reason, we ask you to affirm the district court's dismissal. Thank you. Thank you very much. All right. Mr. Sump, we will hear back from you. Thank you, Your Honor. If I might. When looking at the difference between limitation and bankruptcy cases and the treasurer salvage cases, the difference is the process and procedure. Treasurer cases and bankruptcy cases are in rem cases where the bankruptcy estate is the corpus, it is the race. All of the parties that are appearing in bankruptcy court are making claims against a corpus for which it is finite. Isn't that exactly sort of what we're doing here, right, that in some sense what Jackson Marine is saying is like it's a form almost of interpleader, right, that sort of says, like, here's $900,000. If we're responsible, like, you get to divvy it up. We're not conceding liability, maybe, but in effect, it's just like a bankruptcy proceeding, right? So there's a cap that's determined by the court, right, based on the value. The court's got to do some work to know that. But that seems like a bankruptcy in rem proceeding to me. But it's not. It is not. But why is it different in a material way? It is different in a material way because if the vessel owner cannot satisfy the requirements to limit liability, they are liable for the entire claim. So this isn't a finite amount of property. And in Hood, the same thing, right? So if you don't make the undue hardship showing, then the individual was liable for the entire amount, right? So that's exactly the case in Hood, right? That distinction is literally the case in Hood. Except for the fact that in Hood, you're looking at the bankruptcy estate and we're trying to recover and claw back, right, for the hardship. It's not a claw back, right? The question is whether that debt, which was owed to the state, was discharged. And in order for it to be discharged, the individual had to make an undue hardship showing. And the state said that infringes our sovereign immunity. And the Supreme Court is, like, not even close. So, again, the bankruptcy scenario isn't the same as a limitation of liability act scenario. They are not based on the same law. They are not based on the same jurisdiction. These are in personam claims. Okay, but why does the jurisdiction is different? One's bankruptcy and one's admiralty. Right. Both seem to go back a long way. They seem to be sort of important parts of our nation's history. Okay. So why do we think about admiralty as being, you know, some second class process that, like, doesn't really matter? But bankruptcy, that's super important, right? I mean, my good friend here to the left spent some time on the water, right? Like, those are important issues. Right. So the difference is that the bankruptcy is dealing in the interim treasure salvage cases are dealing with a claim to a race. And the race is the jurisdictional basis of the claim. Admiralty law, there is an admiralty clause to the Constitution that says everything that was within the common law of the admiralty jurisdiction at the time the Constitution was created carries over into the Constitution. This is not that. This was created in 1851. It's not part of the common law of admiralty. This is a statutory creation. Admiralty at the founding didn't address shipwrecks? It addressed shipwrecks but not limitation of liability. That is clearly a statutory creation. Our country existed for 60, 70 years before there was a shipowner limitation of liability act. It didn't exist at all. So your position is that because there was not this act before? The whole point of admiralty is that the U.S. government has the authority of a scope that matches the common law. Correct. So the common law obviously addressed liability stemming from shipwrecks. This is a statutory enactment that does exactly the same thing. It addresses liability from shipwrecks. It is like plainly within the admiralty power of Congress to enact. Now, you want to say not that they couldn't enact it as against private parties. You think it doesn't apply as against states. But your argument here is to suggest that they didn't have the authority to enact it at all. That seems like a wild claim. We're looking for a waiver of sovereign immunity or a waiver of states' rights. That's what we're looking for. The Admiralty Clause of the Constitution doesn't provide that. Only if it implicates the sovereign immunity of the state do we need to find a waiver, right? Yes, Your Honor. Thank you very much. Thank both of you for your very able arguments. The court is going to come down and greet counsel and return to the bench for the second case of the day.
judges: James Andrew Wynn, Julius N. Richardson, Nicole G. Berner